

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 5069 | DATE | March 20, 2003 |
| CASE TITLE | GARY KOSHKO v GENERAL ELECTRIC CO. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Hearing
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Memorandum opinion and order entered. Accordingly, defendant's motion for summary judgment is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | MAR 2 6 2003 | |
| | Notified counsel by telephone. | | date docketed | 27 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | | |
| GDS | courtroom deputy's initials | 03 MAR 25 PM 3:44 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GARY KOSHKO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 01 C 5069 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| GENERAL ELECTRIC COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gary Koshko ("plaintiff") has filed a single-count complaint against General Electric Co. ("defendant"), alleging that defendant deprived him of the rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* by failing to accommodate his alleged disability. Defendant has moved for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons explained below, defendant's motion is granted.

## FACTS

During 1998, plaintiff began to experience severe mood swings and feelings of anger that, he admits, were grossly out of proportion to any provocation or precipitating factors. During September 1999, plaintiff's surges of anger culminated in an episode at his place of employment, which was a Bridgeview, Illinois, facility owned by defendant. During this episode, plaintiff yelled and used swear words. The episode ended when plaintiff tripped and fell to the floor. Neither plaintiff nor anyone else was physically injured. Following this incident, plaintiff's manager, John Shields ("Shields"), suggested that plaintiff apply for short-term disability medical leave, and Shields later approved plaintiff's application. Plaintiff consulted his primary care physician, who referred

him to a psychiatrist, Dr. Jeffrey Ivanoff ("Ivanoff"). On October 6, 1999, Ivanoff began treating plaintiff with a combination of drugs and therapy. Ivanoff diagnosed plaintiff as having a mental disorder described as intermittent explosive disorder ("IED").

IED is characterized by a failure to resist aggressive impulses that result in serious assaultive acts or destruction of property. The degree of aggressiveness expressed during an episode is grossly out of proportion to any precipitating psychosocial factors.

Ivanoff authorized plaintiff's return to work, except for overtime, during December 1999. Plaintiff then was directed by defendant to consult with defendant's doctor. Plaintiff did so. Thereafter, plaintiff returned to work.

On February 3, 2000, plaintiff was summoned by Bob Watson ("Watson"), defendant's national lighting manager of its North America Operation, to a supervisor's office at the Bridgeview facility. Also attending the meeting were Johnny Walker ("Walker"), assistant manager at the Bridgeview facility, Shields, who also was manager of the Bridgeview facility, and Todd Matson ("Matson"), a management trainee. Plaintiff's immediate supervisor was not present at this meeting. Plaintiff alleges that Watson confronted him in a disdainful and insulting manner and upbraided him, critiqued his work product and stated that plaintiff should be working overtime. Plaintiff further alleges that Watson proceeded to slam his fist down on the desktop where he was sitting.

After this meeting, plaintiff returned to his work table, became angry, began cursing and threatened to kill Watson. During this episode, plaintiff punched the air with his fists and slapped his hand on the tabletop, causing his hand to start bleeding. He then shadow-boxed an imaginary Watson, knocked him to the ground and told him to "stay down, stay down." Plaintiff allegedly proclaimed that if he killed Watson, he would get off by pleading insanity. Plaintiff then asked aloud

if anyone knew what hotel Watson was staying at that night. Plaintiff then went to a nearby bathroom and wrapped his bloody hand in a paper towel. When plaintiff returned to his work area and walked by the desk of his work leader, Greg Murphy ("Murphy"), he crumpled up the bloody paper towel, threw it toward Murphy onto his desk and told Murphy to tell Watson that he was "bleeding for him." Plaintiff's coworkers were in the vicinity of his work table at the time of this episode and reported plaintiff's outburst to management. No one, other than plaintiff, was physically injured.

On February 4, 2000, plaintiff was turned away from work and served with a notice that he was suspended without pay as a result of his conduct. On February 25, 2000, plaintiff received a letter terminating his employment for violating the company's "rules of conduct."

## DISCUSSION

I. Summary Judgment Standard

A movant is entitled to summary judgment under Fed. R. Civ. P. 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen Of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Becker v. Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which

the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252. As always, the court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. See Miller v. American Family Mutual Insurance Co., 203 F.3d 997, 1003 (7th Cir. 2000); Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

II. ADA Claim

To recover for a violation of the ADA, plaintiff bears the burden of proving that he is a qualified individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the job. 42 U.S.C. § 12112(a). Defendant argues that: (1) plaintiff is not disabled under the ADA; (2) even if plaintiff were disabled, plaintiff is not a "qualified individual" because he is prone to violent outbursts in the workplace; and (3) there is no reasonable accommodation defendant could provide to plaintiff without incurring "undue hardship." 42 U.S.C. § 12112(b)(5)(A).

A. Whether Plaintiff has a "Disability"

To prove that he is disabled under the ADA, plaintiff must show that he has a physical impairment that substantially limits one or more of his major life activities, has a record of such impairment, or is regarded as having such impairment. 42 U.S.C. § 12102(2). "Major life activit[ies]" include basic life functions, such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 CFR § 1630.2(i); Knapp v. Northwestern Univ., 101 F.3d 473, 479 (7th Cir. 1996).

Defendant argues that plaintiff's IED impairment does not meet the statutory definition of a "disability" under the ADA because there is no evidence that it "substantially limits" any of his

4

"major life activities." See Mack v. Great Dane Trailers, 2002 U.S. App. LEXIS 22028 *2-13 (7th Cir.) (holding that "the central inquiry must be whether the claimant is unable to perform a variety of tasks central to most people's daily lives, not whether claimant is unable to perform tasks associated with her specific job").

To support his claim that his alleged disability substantially limits one or more of his major life activities, plaintiff submits an affidavit from Dr. Robert E. Damptz ("Damptz"), in which the doctor states that plaintiff has "serious emotional problems which impacted such major life activities as sleep and rest, thinking, eating, social interaction with others, home making and work." Damptz, however, did not state that these life activities were "substantially limited," as required to meet the ADA definition. He states only that they were "impacted."

Further, plaintiff specifically identifies primarily two "major life activities" as being substantially limited by his impairment: eating and sleeping. Plaintiff alleges that he has gained 30 pounds of weight recently. Plaintiff fails, however, to show how this weight fluctuation makes him "significantly" different from an average person in the population. Gaining 30 pounds of weight is not a "substantial limitation" on the major life activity of eating. Plaintiff further claims that his sleeping is impacted because it takes him longer to get to sleep. Courts repeatedly have held that sleep disruptions of this type do not render an individual "substantially limited" in sleeping under the ADA. See Stauffer v. Bayer Corp., No. 3:96-CV-661RP, 1997 U.S. Dist. LEXIS 14468 (N.D. Ind. 1997) (holding that "an individual would not be substantially limited in sleeping if s/he had some trouble getting to sleep or sometimes slept fitfully because of a mental impairment"). See also Steele v. Thiokol Corp., 241 F.3d 1248 (10th Cir. 2001) (holding that depression that caused plaintiff often to awake for some time in the middle of the night and cause fatigue at work is not a substantial

limitation on sleeping); E.E.O.C. v. Sara Lee Corp., 237 F.3d 349 (4th Cir. 2001) (holding that an inability to sleep well every night caused by seizure disorder is not a substantial limitation on sleeping).

Although plaintiff's claim that he is a person with a disability is weak, his expert opines that plaintiff has "zero energy" and a severe depressive illness that causes his erratic behavior. Drawing all inferences in favor of plaintiff, the court finds that plaintiff has presented sufficient contested facts to preclude summary judgment on this issue.

B. Whether Plaintiff is a "Qualified Individual"

Defendant argues that, even if plaintiff has a disability, he is not a "qualified individual" under the ADA because he is prone to violent outbursts in the workplace and because he poses a "direct threat" to the health and safety of others. An individual whose alleged disability disposes him to violent outbursts is not a "qualified individual" with a disability. Chapa v. Adams, 168 F.3d 1036 (7th Cir. 1999) (holding that "a person whose disability disposes him to violent outbursts is not 'otherwise qualified' for employment; an employer need not 'accommodate' the disability by hiring guards to watch its workforce"). See also Palmer v. Circuit Court of Cook County, 117 F.3d 351 (7th Cir. 1997) (holding that the ADA "does not require an employer to retain a potentially violent employee"). Therefore, plaintiff does not get past the threshold requirement that he be "qualified" under the ADA.

C. Whether There Was a Reasonable Accommodation Defendant Could Have Provided to Plaintiff Without Incurring "Undue Hardship"

Defendant further argues that no reasonable accommodation would enable plaintiff to discharge effectively and safely the essential functions of his job. It is undisputed that plaintiff has

violent outbursts at work. The Seventh Circuit plainly has held that an employer does not have a duty to accommodate an employee's alleged disability when that disability creates or results in violence in the workplace. As the Seventh Circuit noted in Palmer, 117 F.3d at 352-353:

> It is true that an employer has a statutory duty to make a 'reasonable accommodation' to an employee's disability, that is, an adjustment in working conditions to enable the employee to overcome his disability, if the employer can do this without 'undue hardship.' But, we cannot believe that this duty runs in favor of employees who commit or threaten to commit violent acts.... Such a requirement would place the employer on a razor's edge—in jeopardy of violating the Act if it fired such an employee, yet in jeopardy of being deemed negligent if it retained him and he hurt someone."

See also Williams v. Widnall, 79 F.3d 1003 (10th Cir. 1996); Husowitz v. Runyon, 942 F.Supp. 822, 834-35 (E.D.N.Y. 1996).

## CONCLUSION

Because this court finds that, (a) plaintiff is not a qualified individual, and (b) there was no reasonable accommodation that would have rendered him a "qualified individual" because he is prone to violent outbursts in the workplace and poses a "direct threat" to the health and safety of others, plaintiff's ADA claim against the defendant fails. The court grants defendant's motion for summary judgment.

**ENTER: March 20, 2003**

Robert W. Gettleman
United States District Judge